**EXHIBIT A**

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI220003619
Transaction ID: 0018350459
Filing Date: 05/13/2022 02:42:40 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| SCOTTSDALE INDEMNITY COMPANY, | CASE NO. CI 21-____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ARCH INSURANCE COMPANY, | |
| Defendant. | |

Scottsdale Indemnity Company ("Scottsdale"), for its cause of action against Arch Insurance Company ("Arch"), alleges:

1. Scottsdale is an insurance company formed and existing under the laws of Ohio, with its principal office in Ohio and its principal place of business in Arizona.

2. Arch is an insurance company formed and existing under the laws of Missouri, with its principal place of business in New Jersey. Arch does business in Douglas County, Nebraska

3. Both Scottsdale and Arch issued policies of insurance which form the basis of this dispute to Meylan Enterprises, Inc., a corporation which has its principal office and place of business in Omaha, Douglas County, Nebraska ("Meylan").

4. On November 30, 2017, Meylan and two former employees, David Marshall ("Marshall") and Larry Massie ("Massie"), were sued in the Madison County Circuit Court (Illinois) by U.S. Nitro Blasting & Environment, LLC at Case No. 2017L001551 (the "Lawsuit").

5. Scottsdale issued a policy of Directors' and Officers' Liability insurance to Meylan for the policy period March 1, 2017, to March 1, 2018 (the "Scottsdale Policy"). The Scottsdale Policy was a

claims made and reported policy which provided coverages for, among other things, Directors' and Officers' and Company Liabilities.

6. Arch issued a policy of General Liability Insurance to Meylan which was in full force and effect on the date the Lawsuit was filed and on the date at least some of the alleged events which formed the basis for the claims alleged in the Lawsuit allegedly occurred. The policy issued by Arch included coverage for tortious interference with prospective business advantage and commercial disparagement.

7. The Complaint in the Lawsuit alleged among other things tortious interference with prospective business advantage and commercial disparagement which triggered a duty for Arch to defend Meylan, Marshall and Massie under the terms of Arch's CGL Policy.

8. Despite having a duty to defend under its Policy, Arch denied coverage and refused to defend on the ostensible basis that its insureds denied that they had committed tortious interference with prospective business advantage or commercial disparagement and, thus, Arch had no duty to provide a defense in the Lawsuit.

9. Scottsdale honored its obligations under the Scottsdale Policy and provided a defense subject to a full reservation of rights, even though it did not believe Scottsdale would eventually be obligated to provide indemnity for damages, if any, awarded as a result of the Lawsuit.

10. The Lawsuit was settled before trial. Arch was offered the opportunity to participate in the settlement but refused. Under the terms of the settlement agreement, Meylan and Scottsdale between them were required to pay a total of $900,000.00 to the Plaintiff, and that sum has been paid by Scottsdale and Meylan.

11. Meylan, Marshall and Massie have each assigned their claims against Arch under the Arch Policy to Scottsdale.

12. In addition to the settlement payment, Scottsdale incurred $341,771.14 defending the Lawsuit.

## FIRST CLAIM FOR RELIEF
### (Equitable Subrogation)

13. Scottsdale incorporates the allegations set forth in paragraphs 1 through 12 above as if set forth here.

14. Scottsdale assumed the defense of Meylan, Marshall and Massie even though Arch had an equal or greater duty to do so under the Arch Policy. In addition, Scottsdale paid indemnity that should have been paid by Arch.

15. Under the doctrine of equitable subrogation, Scottsdale is entitled to recover from Arch all, or Arch's pro rata share, of defense and the indemnity costs paid by Scottsdale.

WHEREFORE, on its First Claim for Relief, Scottsdale requests judgment against Arch in the amount of the defense costs and indemnity payments it paid that should have been paid by Arch, plus interest from the dates those costs and payments were paid by Scottsdale, the costs of this action, and attorney's fees pursuant to Section 44-359 R.R.S. Neb.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

16. Scottsdale incorporates the allegations in paragraphs 1 through 15 above as if fully set forth here.

17. At least some of the claims asserted in the Lawsuit were covered under the Arch Policy and Arch should have provided a defense to Meylan and paid the settlement amount paid by Scottsdale and Meylan.

18. By virtue of the assignment of Meylan's claims, Scottsdale is also entitled to recover the defense costs it paid and the full amount Scottsdale and Meylan together contributed to settle the Lawsuit.

3

WHEREFORE, on its Second Claim for Relief, Scottsdale requests judgment against Arch in the amount of the defense costs and indemnity payments it paid that should have been paid by Arch, plus interest from the dates those costs and payments were paid by Scottsdale, the costs of this action, and attorney's fees pursuant to Section 44-359 R.R.S. Neb.

DATED:  May 13, 2022.

                        SCOTTSDALE INDEMNITY
                        COMPANY, Plaintiff,

By  *s/ Thomas J. Culhane*
     Thomas J. Culhane, #10859
     Erickson | Sederstrom PC LLO
     10330 Regency Parkway Drive, #100
     Omaha, NE 68114
     (402) 397-2200
     culhane@eslaw.com

     and

     Frank Fox
     Burch & Cracchiolo, P.A.
     1850 North Central, 17th Floor
     Phoenix, AZ 85004
     (602) 908-1707
     ffox@bcattorneys.com

1337743_7.docx